UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

9:17-CV-80161-ROSENBERG/HOPKINS

ADAM SABO,

    Appellant,

v.

ROBERT C. FURR,

    Appellee.
_____/

**ORDER AFFIRMING BANKRUPTCY COURT'S ORDER GRANTING
MOTION TO APPROVE STIPULATION TO COMPROMISE CONTROVERSY**

This is a bankruptcy appeal. On September 13, 2015, Debtor Alberto Candaro ("Debtor") filed a voluntary Chapter 7 bankruptcy petition in the United States District Court for the Southern District of New York. Venue was later transferred to this Court. Appellee Robert Furr ("Trustee") is the permanent trustee of Debtor's estate. Appellant Adam Sabo ("Appellant") is the sole creditor. On November 18, 2016, a Stipulation to Compromise Controversy Between the Trustee, Debtor, and Other Parties ("Stipulation") came before Judge Hyman of the Bankruptcy Court for approval. Appellant objected. Following a hearing, the Bankruptcy Court approved the Stipulation, overruling Appellant's objections. Appellant appealed. Finding no reversible error, the Court now **AFFIRMS** the Bankruptcy Court's Order Granting Motion to Approve Stipulation to Compromise Controversy between the Trustee, Debtor, and Other Parties ("Order Approving Stipulation"). DE 1.

## I. BACKGROUND

The facts in this Section largely mirror those set forth in the Stipulation. DE 13-4 at 410-30. The Court has confirmed their accuracy by reference to the record, with a particular focus on the exhibits admitted during the hearing before Judge Hyman. Where this Section supplements the facts provided in the Stipulation, the Court has so noted.

### A. Appellant's Judgment Against Debtor.

On or about July 16, 1998, Appellant entered into a Stock Purchase Agreement ("SPA") with Debtor to purchase 50% of the shares in Candaro Realty Corporation ("Candaro Realty"). At the time, Debtor was the sole shareholder of Candaro Realty. Candaro Realty's only asset was a single parcel of real estate.

In early 2002, Appellant filed a derivative lawsuit (the "Initial Action") against Debtor in the Supreme Court of the State of New York, County of New York. *See Sabo v. Candaro*, Index No. 101800/02.[1] Appellant alleged Debtor had impermissibly sold the parcel and misappropriated the proceeds. Debtor asserted three counterclaims against Appellant, including a breach of contract claim alleging Appellant never paid the amount due under the SPA.

On March 21, 2007, the Honorable Shirley Kornreich issued a Decision and Order holding that Appellant was a shareholder of Candaro Realty as a matter of law and was, therefore, entitled to recover half of the proceeds from the sale of the parcel. But the court also found that Appellant had breached the SPA by failing to pay the full amount due thereunder.

On November 2, 2007, the court entered a final judgment (the "New York Judgment"), subtracting the amount still due under the SPA, with interest, from the proceeds from the sale of the parcel to which Appellant was otherwise entitled. Judgment was entered in Appellant's favor

---

[1] The case was later removed to the Supreme Court of the State of New York, County of Rockland, before being refiled in the County of New York under Index No. 401573/04.

against the Debtor in the amount of $560,304.41 and against Candaro Realty in the amount of $648.638.06.

### B. Taxi Medallions and Related Litigation

Debtor was also the operator and sole shareholder of two New York taxi cab businesses: H&M Cab and King Spring Taxi, Inc. ("King Spring"). H&M Cab owned NYC Taxi Medallions Nos. 7N77 and 7N78 ("7N Medallions"). King Spring owned NYC Taxi Medallions Nos. 4J68 and 4J69 ("4J Medallions"). Allegedly in connection with Debtor's retirement to Florida, the four medallions were transferred to businesses owned by Debtor's son, Heath Candaro: Bonehead, LLC and Night Owl.

On October 17, 2012 H&M Cab entered into a Medallion Sale Contract with Bonehead. The transfer of the 7N Medallions to Bonehead was completed through Gold Taxi Brokers, Inc., another company owned by Debtor. The transfer was approved by the NYC Taxi and Limousine Commission.

Also on October 17, 2012, King Spring entered into a Medallion Sale Contract with Night Owl. The transfer of the 4J Medallions, like the transfer of the 7N Medallions, was completed through Gold Taxi Brokers, Inc. This transfer, too, was approved by the NYC Taxi and Limousine Commission.

Based on the Trustee's investigation, which included a discussion with Daniel Goodin of the NYC Taxi and Limousine Commission, the Trustee estimated the medallions' value at $500,000.00 each. Capital One Medallion Finance, a trade name of Capital One Equipment Finance Corp. ("Capital One"), holds a security interest in the 7N Medallions based upon a Note and Security Agreement, dated July 25, 2013. The face amount is $1,600,000.00 and the payoff as of the date of the Stipulation was approximately $1,511,031.49.

Capital One also holds a security interest in the 4J Medallions based upon a Note and Security Agreement, dated July 25, 2013. The face amount is $1,600,000.00 and the payoff as of the date of the Stipulation was approximately $1,516,504.66. UCC Financing Statements were recorded on July 23, 2013, perfecting both interests.

On October 29, 2013 Appellant filed a Verified Complaint in New York state court against Debtor, Heath Candaro, Debtor's wife Maxine Candaro, King Spring, H&M Cab, Bonehead, Night Owl, Heath Management Corp., and Gold Taxi Brokers, Inc. (collectively "Defendants"). The case—captioned *Sabo v. Candaro, et al.*—seeks a judgment against Defendants arising of the conveyances of the 7N and 4J Medallions.

On December 17, 2013 (after the Taxi Medallions had already been transferred and replacement liens had been placed on them), the New York state court entered an order restraining Defendants from selling, transferring, or encumbering the stock or ownership interest in the Taxi Medallions until further order of the New York state court. The case remains pending.

Appellant's Opening Brief refers to another proceeding in New York state court, which was filed *against* Appellant on July 1, 2013. *See Heath Management Corp. v. Sabo*, Index No. 156039/13. Petitioners Heath Management Corp. and King Spring filed the case seeking to prohibit Appellant from enforcing against them the judgment Appellant had obtained against Debtor. This case is not mentioned as part of the recitation of facts in the Stipulation. However, it is included here because a temporary injunction issued in the course of this case is foundational to Appellant's arguments on appeal. On or about July 2, 2013, the state court issued an Emergency Order to Show Cause with Temporary Restraining Order, which prohibited King Spring from transferring or encumbering the 4J Medallions pending a hearing. Index No.

156039/13 at DE 11. During the hearing, which was held on July 11, 2013, the court reserved judgment and continued the injunction pending a ruling on the motion.[2] *Id.* at 15. The Decision and Order, of which this Court takes judicial notice, provided that the injunction would expire on August 21, 2013—twenty days after the Decision and Order appeared on the docket. *Id.*

### C. Boynton Beach Residence

Less than six months after the New York state court entered final judgment against him in the Initial Action, Debtor purchased in his individual name a home in Boynton Beach, Florida ("Property"). The Property was purchased for $700,225.00 in cash, with no mortgage. On March 24, 2009, Debtor transferred the Property to himself and his wife via quitclaim deed, for no consideration. Since then, it has been owned jointly by Debtor and Ms. Candaro, as husband and wife. On May 11, 2016, Debtor filed an amended Schedule C, claiming the Property as his exempt homestead pursuant to Florida Constitution, art. X, § 4(a)(1), and exempt as "tenancy by entireties" property.

### D. Settlement Terms

On November 18, 2016, Appellee entered into the Stipulation. DE 13-4 at 400-430. The terms of the settlement include the Debtor waiving his discharge and payment of $200,000.00 to the Trustee in exchange for the Trustee: (i) waiving any objection to claimed exemptions regarding the Property; (ii) abandoning the estate's interest in any non-exempt assets; (iii) transferring all right, title, and interest in a legal malpractice claim to Ms. Candaro; and (iv) settling all fraudulent transfer claims related to the taxi medallions. *Id.* Appellant's appeal is focused on the first and fourth listed items. The Trustee testified that he was settling the claims

---

[2] The Court notes that Judge Hyman declined to admit the transcript reflecting this ruling into evidence. The Court also notes that the Decision and Order addressed in the next sentence was not part of the evidence before Judge Hyman. The Court provides these details for context.

5

the estate has against the Debtor and other settling parties, but that he was not settling Appellant's claim against Debtor. The Stipulation explains in detail the reasons underlying Trustee's business judgment that the Stipulation is in accord with the four factors set forth by the Eleventh Circuit in *In re Justice Oaks II, Ltd.*, 898 F.2d 1544 (11th Cir. 1990). Much of that analysis was reiterated on the record by the Bankruptcy Court when it approved the Stipulation.

## II. LEGAL STANDARD AND STANDARD OF REVIEW

A bankruptcy court deciding whether to approve a proposed settlement must consider the four factors set forth by the Eleventh Circuit in *In re Justice Oaks II, Ltd.*, 898 F.2d 1544 (11th Cir. 1990): (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises. *Id.* at 1549.

This Court reviews a bankruptcy court's findings of fact for clear error. It reviews *de novo* conclusions of law. The abuse of discretion standard applies to a bankruptcy court's approval of a settlement agreement. A bankruptcy court does not abuse its discretion in approving a settlement agreement unless the agreement "fall[s] below the lowest point in the range of reasonableness." *In re Martin*, 490 F.3d 1272, 1275 (11th Cir. 2007).

## III. ANALYSIS

### A. The Bankruptcy Court Did Not Abuse Its Discretion In Approving The Stipulation to Compromise Controversy.

Appellant presents three issues on appeal. The first is general. Appellant argues the Trustee failed to establish that the compromise was fair and reasonable vis-à-vis Appellant, the sole creditor. The second two arguments are more specific: (i) that the bankruptcy court erred in approving the compromise because the Trustee failed to adequately investigate whether the

6

medallions were, in fact, subject to valid liens and, relatedly, whether the medallions' transfer was fraudulent; and (ii) that the bankruptcy court erred by approving the compromise despite the Trustee's failure to "investigate where the $3.2 million dollars that the debtor's son, Heath Candaro, or his solely owned corporations, supposedly received from Capital One . . . actually went." DE 16 at 25. The Court begins with Appellant's more specific arguments.

Appellant argues that the bankruptcy court erred in approving the compromise because the Trustee failed to adequately investigate whether the medallions were, in fact, subject to valid liens and, relatedly, whether the medallions' transfer was fraudulent. He asserts that an adequate investigation of these issues would have revealed the existence of an injunction rendering both the liens and transfers invalid. That argument is, however, belied by the record.

Appellant testified: "[T]here are no liens on the medallions." Hrng. Trans. at 56:3-4. Judge Hyman responded: "Okay. And I've asked you to show me why there aren't liens." *Id.* at 56:5-6. Appellant explained that there are no liens (and that the transfer of the medallions was fraudulent) because the judge presiding over his state court action in New York "had put a [Temporary Restraining Order] on the medallions on July 2nd [of 2013]." *Id.* at 7-12. Judge Hyman repeatedly asked Appellant for proof of a Temporary Restraining Order. *See id.* at 57:8-9. Appellant responded: "[T]hey didn't provide yourself [*sic*] with that document, with all due respect, so I can't argue it." *Id.*

Appellant's objections reference "Exhibit 5, the TRO" as evidence of the injunction. This document was admitted into evidence during the hearing before Judge Hyman. But Exhibit 5, which was entered during the course of the state court case against Appellant, only prohibited the transfer and encumbrance of the taxi medallions by King Spring prior to a hearing ultimately held on July 11, 2013. DE 13-4 at 463; *id.* at 471. At the hearing, the state court stated: "I am

7

going to continue a TRO here only to the extent of directing that King Spring Taxi . . . is not to sell, transfer, or encumber its assets." *Id.*

However, the medallions owned by King Spring had already been transferred on May 8, 2013—several months before the hearing. Hrng. Ex. 18. Nor has Appellant produced persuasive evidence that the injunction impacted the subsequent liens. Liens were placed on the medallions after July 11, 2013. But they were encumbered by Bonehead. The judge's oral ruling only prohibited King Spring from encumbering the medallions. Bonehead was not even a party to the case. Appellant also argues "[t]he liens that Capital One placed on the medallions are invalid [] because they were not placed through [Taxi and Limousine Commission]." DE 16 at 24. But Appellant has produced no evidence on this point.

Next, Appellant contends the bankruptcy court erred by approving the compromise despite the Trustee's failure to "investigate where the $3.2 million dollars that the debtor's son, Heath Candaro, or his solely owned corporations, supposedly received from Capital One . . . actually went." DE 16 at 25. The paragraph of argument that follows this statement appears almost totally unrelated, with the exception of the concluding sentences, which read: "Having access to all that information, including tracking of the cash from the loans, would have been important in determining whether $200,000 was sufficient or whether the amount asked should have been much higher. There is [*sic*] literally millions of untraced dollars." DE 16 at 26. Heath Candaro is not the debtor. He is the debtor's son. Appellant has not presented any authority for the proposition the Trustee's failure to trace monies lent to the Debtor's son gives rise to reversible error.

Finally, the Court turns to Appellant's general objection that the Trustee failed to establish that the compromise was fair and reasonable vis-à-vis Appellant, the sole creditor. As

noted above, a bankruptcy court must consider four factors when deciding to approve or disapprove a proposed settlement: (a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and, finally (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises. *In re Justice Oaks II, Ltd.*, 896 F.2d 1544, 1550 (11th Cir. 1990). Judge Hyman found all four of these factors favored approving the settlement.

Judge Hyman found success in the litigation unlikely. First, he addressed claims regarding the Debtor's home. Judge Hyman acknowledged that, under the Bankruptcy Code, the Trustee has a right to object to that claim of exemption. Hrng. Trans. 78:21-24. However, he ultimately credited the Trustee's testimony that any assertion Debtor is not entitled to claim the home as exempt would be very difficult in light of the transfer. *Id.* at 79:2-5. Next, Judge Hyman turned to the fraudulent conveyance claims regarding the medallions. The Trustee testified that success on these claims was unlikely because the transfers were executed between corporate entities, so the corporate veil would have to be pierced. *Id.* at 80:12-14. Judge Hyman observed that, as an easier alternative, the companies could be put into bankruptcy. *Id.* at 80:16-18. But he nonetheless observed success was not likely given other hurdles (*e.g.* the issue of whether, despite the passage of time, the corporations in bankruptcy would have a right to sue). *Id.* at 80:18-23. Appellant has not put forward any evidence or argument that disturbs Judge Hyman's conclusion that "the probability of success on the litigation is not assured in any way, shape, or form . . . ." *Id.* at 82:13-15.

Next, Judge Hyman concluded substantial difficulties would likely be encountered in collecting on claims related to the medallions.[3] All of the record evidence supports Judge Hyman's conclusion that, even if the fraudulent transfer claim succeeded, collectability would be nearly impossible because there is no equity in the medallions. *Id.* at 81:10-21. The injunction that Appellant asserts invalidates the liens does not move the needle. It forbids King Spring from encumbering the medallions, but King Spring had transferred them to Bonehead months earlier.

Judge Hyman concluded that the litigation would be complex for many of the reasons discussed in addressing the first factor. He also noted that developing the required facts would also result in inconvenience and delay because the underlying events occurred in New York. *Id.* at 83:1-6. Finally, Judge Hyman noted that the Trustee had already incurred $85,000.00 in costs, which Judge Hyman predicted would "double or triple" if the Trustee pursued any of the "difficult, expensive" causes of action on the table. *Id.* at 82:21-25; 83:1-2.

Finally, Judge Hyman turned to the interests of the sole creditor: Appellant. He emphasized that the Trustee was not settling the claim Appellant has against the Debtor. Instead, "[a]ll the Trustee is doing is settling the estate's causes of action." *Id.* at 83:7-16. He determined, in light of the other *Justice Oaks* factors, that a monetary settlement of $200,000.00 for the estate's claim of homestead exemption, other minor exemptions, and the estate's causes of action related to the medallions fell above the "lowest point in the range of reasonableness." *Id.* at 83:7-21. Appellant has not demonstrated otherwise on appeal.

---

[3] Judge Hyman did not make an explicit finding regarding the home.

## IV. CONCLUSION

The Stipulation approved by the Bankruptcy Court does not "fall below the lowest point in the range of reasonableness." *In re Martin*, 490 F.3d 1272, 1275 (11th Cir. 2007). Accordingly, the Court **AFFIRMS** the Bankruptcy Court's Order Granting Motion to Approve Stipulation to Compromise Controversy between the Trustee, Debtor, and Other Parties. DE 1. The Clerk of Court shall **CLOSE THIS CASE**. All pending motions are **DENIED AS MOOT**, all hearings **CANCELLED**, and all deadlines **TERMINATED**.

**DONE AND ORDERED** in Chambers, Fort Pierce, Florida, this 18th day of August, 2017.

Copies furnished to:
Counsel of Record

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE